Filed 4/23/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038755 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1094633) |
| v. | |
| ROBERT MICHAEL KLATT, | |
| Defendant and Appellant. | |

At a bench trial, the trial court found defendant Robert Michael Klatt guilty on two counts of lewd conduct with a minor aged 14 or 15. (Pen. Code § 288, subd. (c)(1).)[1] The court granted a three-year term of probation that included six months in county jail as a condition of probation. The court also required defendant to participate in a sex offender management program (the program) as a condition of probation.

At issue in this appeal are three additional probation conditions ordered by the court. First, the court ordered defendant to waive "any privilege against self-incrimination" and participate in polygraph examinations as part of the program. Consistent with our recent opinion in *People v. Friday* (2014) 225 Cal.App.4th 8 (*Friday*), we hold that under *Minnesota v. Murphy* (1984) 465 U.S. 420 (*Murphy*), the Fifth Amendment prohibits a waiver of "any privilege against self-incrimination" as a condition of probation. Defendant may be required, however, to participate in polygraph

---

[1] Subsequent undesignated statutory references are to the Penal Code.

examinations to the extent the questions posed to him relate to the successful completion of the program, the crimes of which he was convicted, or related criminal behavior.

Second, the court ordered defendant to waive any psychotherapist-patient privilege to enable communication between the sex offender management professional and the probation department. We construe the waiver of the psychotherapist-patient privilege as requiring waiver only insofar as necessary to enable communication between the supervising probation officer and the sex offender management professional. Construed in this fashion, we uphold this waiver as constitutional.

Third, the court ordered defendant not to date, socialize, or form any romantic relationship with any person who has physical custody of a minor unless approved by the probation officer. We hold that this condition is unconstitutionally vague and overbroad in violation of defendant's right to freedom of association. On remand, we will instruct the court to consider imposing a probation condition that is more "sufficiently precise" and "closely tailor[ed]" to the purpose of the condition. (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.)

Finally, the trial court ordered a restitution fine of $264. Defendant contends his trial counsel was ineffective for failing to object to the imposition of the restitution fine. We conclude trial counsel did not provide ineffective assistance of counsel and we reject this claim.

We will reverse the judgment and remand to the trial court with instructions reflecting the above holdings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2006, when defendant was 27 years old, his father married the mother of R.D., the victim. R.D., as well as R.D.'s mother and his two siblings, moved in with defendant and defendant's father.

In 2008 and early 2009, when R.D. was 14, defendant began spending a lot of time with him and sending him numerous text messages. Defendant showed R.D. photos of

2

naked women, questioned R.D. about masturbation, and asked R.D. to compare his pubic hair with defendant's pubic hair. On two occasions in 2009, defendant touched R.D. inappropriately. On the first occasion, defendant and R.D. were wearing bathrobes, but no underwear, when the two exchanged back massages. On another occasion, R.D. shared a bed with defendant. R.D. woke up in the middle of the night and felt defendant's hand underneath his shorts, touching his buttock area. R.D.'s older brother, M.D., also testified about inappropriate interactions between defendant and himself. For example, defendant asked M.D. various questions about his masturbation habits, and the two exchanged photographs of their genitals via cell phones.

At trial, defendant denied these allegations. Several witnesses testified to his character for truthfulness and the appropriateness of his conduct around other young men.

The trial court credited the testimony of the prosecution witnesses and found that defendant engaged in the two alleged touching incidents with R.D. in 2009. The court thereby found defendant guilty as charged on two counts of lewd conduct with a minor aged 14 or 15. (§ 288, subd. (c)(1).)

At sentencing, the court suspended the imposition of sentence and granted a three-year term of probation, including six months in county jail as a condition of probation. Among other probation conditions, the court ordered defendant to participate in a sex offender management program pursuant to section 1203.067. Additionally, the court ordered the three probation conditions set forth above. Defendant lodged no objections to the probation conditions.[2]

Finally, the trial court imposed a restitution fine of $264. The trial court did not explain how it arrived at this figure. The probation report recommended a restitution fine

---

[2] The Attorney General concedes that defendant may challenge the probation conditions for the first time on appeal. We agree. (*In re Sheena K.*, *supra*, 40 Cal.4th at pp. 888-889 [a facial challenge to a probation condition, as a pure question of law, is not forfeited by the failure to object in the court below].)

of "between $200 and $10,000 and a 10% Administrative Fee [. . .] pursuant to Section 1202.4 of the Penal Code." Defendant did not object to this fine.

## II. DISCUSSION

A. *Section 1203.067, Subdivision (b)(3)*

For any defendant placed on probation for a registerable sex offense, section 1203.067, subdivision (b)(3) requires, as a condition of probation, "Waiver of any privilege against self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program." Defendant challenges this provision on the grounds that the waiver violates his Fifth Amendment rights and that the polygraph requirement is unconstitutionally overbroad under *Brown v. Superior Court* (2002) 101 Cal.App.4th 313 (*Brown*).

1. *Waiver of Any Privilege Against Self-Incrimination*

This panel recently considered a challenge to the waiver of any privilege against self-incrimination in *Friday*, *supra*, 225 Cal.App.4th 8. The majority in that case held that the waiver is prohibited by the Fifth Amendment under *Murphy*, *supra*, 465 U.S. at p. 420. We reaffirm our prior holding in *Friday*.

By requiring the "Waiver of any privilege against self-incrimination," the plain language of the statute squarely implicates defendant's rights under the Self-Incrimination Clause of the Fifth Amendment. Furthermore, the "core" right of the Self-Incrimination Clause protects against the use of compelled statements "*in a criminal proceeding* against the person who gave them." (*Maldonado v. Superior Court* (2012) 53 Cal.4th 1112, 1128 (*Maldonado*) [citing *Chavez v. Martinez* (2003) 538 U.S. 760, 766-773 (plur. opn. of Thomas, J.) (*Chavez*)], original italics.) Because the statute requires waiver of *any* privilege against self-incrimination, the probation condition necessarily includes a waiver of the "core" right under the Self-Incrimination Clause. The plain language of the waiver, if left intact, would therefore allow the state to use defendant's compelled statements against him in a separate criminal proceeding. But the

4

United States Supreme Court has held that the Fifth Amendment prohibits the state from using a probationer's compelled statements against the probationer in a separate criminal proceeding. [3] (*Murphy*, *supra*, 465 U.S. 420; accord *United States v. Saechao* (9th Cir. 2005) 418 F.3d 1073; *United States v. Antelope* (9th Cir. 2005) 395 F.3d 1128.)

Furthermore, the state may not compel a probationer to waive the right to invoke the Fifth Amendment or otherwise punish a probationer for invoking its protections. (*Murphy*, *supra*, 465 U.S. at p. 438 ["Our decisions have made clear that the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege."].)  This holding was based on the United States Supreme Court's longstanding "penalty cases" jurisprudence, under which the Fifth Amendment prohibits a compelled, prospective waiver of the Fifth Amendment, even prior to and apart from any criminal proceeding.  (*Lefkowitz v. Cunningham* (1977) 431 U.S. 801; *Lefkowitz v. Turley* (1973) 414 U.S. 70; *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation* (1968) 392 U.S. 280, 283; *Gardner v. Broderick* (1968) 392 U.S. 273, 276.)  More recently, the Supreme Court reaffirmed these principles, and a plurality of the court observed that "Once an immunity waiver is signed, the signatory is unable to assert a Fifth Amendment objection to the subsequent use of his statements in a criminal case, even if his statements were in fact compelled.  A waiver of immunity is therefore a prospective waiver of the core self-incrimination right in any subsequent criminal proceeding . . . ."  (*Chavez*, *supra*, 538 U.S. at p. 768, fn. 2 (plur. opn. of Thomas, J.).)  These cases make clear that the probation condition here, by requiring

---

[3] *Murphy* referred to "compelled" statements as those compelled over a valid claim of the Fifth Amendment.  (*Murphy*, *supra*, 465 U.S. at p. 427.)  However, the Fifth Amendment is not "self-executing."  (*Id.* at p. 425.)  If a probationer does not explicitly invoke the Fifth Amendment, he or she voluntarily waives the privilege against self-incrimination and the statements are not "compelled" within the meaning of the Fifth Amendment.  Under these circumstances, the probationer's statements may be used in a criminal prosecution, just as Murphy's statements were used against him.

5

defendant to waive any privilege against self-incrimination, is prohibited under the Fifth Amendment.

But even without the waiver, the state may still compel defendant to participate in treatment—even if doing so requires him to make incriminating statements—provided he retains immunity from the use of compelled statements in separate criminal proceedings. As the court in *Murphy* observed, "a state may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination. Under such circumstances, a probationer's 'right to immunity as a result of his compelled testimony would not be at stake,' . . . ." (*Murphy*, *supra*, 465 U.S. at p. 435, fn. 7.)

The California Supreme Court recently reaffirmed this principle as applied to public employees in *Spielbauer v. County of Santa Clara* (2009) 45 Cal.4th 704 (public defender could be compelled under threat of discharge to answer questions over his claim of the privilege provided he retained immunity from prosecution). Our high court held, "In many instances, of course, it is necessary or highly desirable to procure citizens' answers to official questions, including their formal testimony under oath. In such circumstances, an individual's invocation of the privilege against self-incrimination would frustrate legitimate governmental objectives. In light of the competing interests, it is well established that incriminating answers may be officially compelled, without violating the privilege, when the person to be examined receives immunity 'coextensive with the scope of the privilege'—i.e., immunity against both direct and 'derivative' criminal use of the statements. [Citations.] In such cases, *refusals to answer are unjustified*, 'for the grant of immunity has removed the dangers against which the privilege protects. [Citation.]' " (*Id.* at pp. 714-715.) (Italics added.) Furthermore,

6

where the state's competing interests require it, the state need not issue a formal prospective grant of immunity.[4] (*Id.* at p. 725.)

Under these principles, no waiver is necessary to require defendant's participation in the sex offender management program. The state may compel defendant to participate in the program and in polygraph examinations as part of the program, even if doing so requires him to make incriminating statements. (*Murphy*, *supra*, 465 U.S. at p. 435, fn. 7.) However, if defendant invokes the Fifth Amendment, and the state continues to compel incriminating statements over his valid invocation of his Fifth Amendment privilege, then he retains immunity from the use and derivative use of his compelled statements in any separate criminal proceeding against him. (*Murphy*, *supra*, 465 U.S. at p. 435.)

A separate panel of this court recently upheld the waiver as constitutional under the Fifth Amendment. (*People v. Garcia* (2014) 224 Cal.App.4th 1283 (*Garcia*).) The majority in *Garcia* acknowledged that the state could not constitutionally use a probationer's compelled statements against him or her in a separate criminal proceeding. However, the *Garcia* majority concluded that a "Waiver of any privilege against self-incrimination" does not include a waiver of the "core" right protecting against the use of compelled statements in such proceedings. Thus, under *Garcia*, affected probationers enjoy use and derivative use immunity for any incriminating statements made as part of the program.

The majority in *Garcia* adopted the premise that, without the waiver, the privilege against self-incrimination would still give probationers a right "to refuse to answer

---

[4] The state's interest here is at least as great as those in *Spielbauer*. This is particularly so when that interest is balanced against the rights of a probationer, who generally enjoys less constitutional protection than a public employee who is not convicted of any crime. (See *United States v. Knights* (2001) 534 U.S. 112, 119 ["Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled." ' "].)

questions." (*Garcia*, *supra*, 224 Cal.App.4th at p. 1298.) Thus, the majority reasoned, "The waiver provision is critical because it prevents a probationer from refusing to provide such disclosures on self-incrimination grounds."[5] (*Id.* at p. 1289.)

We respectfully disagree. Provided probationers have immunity for incriminating statements made during the program—and the *Garcia* majority agrees they do—the Fifth Amendment already allows the state to compel their statements. Thus, no waiver of the privilege is required because the privilege against self-incrimination does not give probationers the right "to refuse to answer questions" if they are immune from the use of those statements in separate criminal proceedings.[6] More importantly, the *Garcia* majority construes the language of the statute to mean something other than what it plainly says. Even though the condition waives "*any* privilege against self-incrimination," (italics added) the *Garcia* majority construes the statute to exclude the "core" right of the privilege from the scope of the waiver—a construction that cannot be reconciled with the plain language of the statute.

For these reasons, we reaffirm our holding in *Friday* that the Fifth Amendment prohibits this portion of the probation condition, and we will order the trial court to strike the prohibited waiver language on remand.

---

[5] Under *Garcia*, then, probationers who are not subject to the waiver requirement—e.g., because they committed the underlying offense before the September 9, 2010 effective date of the waiver provision—have a right to refuse to answer questions even if they have immunity from criminal prosecution. Logic would dictate that this right would further extend to *any* probationer not subject to such a waiver requirement. We do not believe this is what the Legislature intended to do when it enacted section 1203.067, subdivision (b)(3).

[6] As *Murphy* recognized, the probationer is in "no better position than the ordinary witness at a trial or before a grand jury who is subpoenaed, sworn to tell the truth, and obligated to answer on the pain of contempt . . . ." (*Murphy*, *supra*, 465 U.S. at p. 427.) Courts routinely punish witnesses who refuse to answer questions under immunity.

8

2. *Participation in Polygraph Examinations*

In *Friday*, *supra,* 225 Cal.App.4th 8, this panel previously considered the requirement that probationers participate in polygraph examinations. Following the analysis of the Fourth District Court of Appeal in *Brown*, *supra*, 101 Cal.App.4th 313, we applied the factors set forth in *People v. Lent* (1975) 15 Cal.3d 481, and upheld the basic requirement that the probationer participate in polygraph examinations. However, in that analysis, we also concluded that the requirement as worded must be construed narrowly to allow only examination questions reasonably related to a probationer's successful completion of the sex offender management program, the crime of which he or she was convicted, or related criminal behavior, whether past or future.

We see no reason to deviate from that analysis here. Accordingly, provided the probation condition is narrowly construed in the manner set forth above, we uphold the requirement that defendant participate in polygraph examinations.

B. *Relationships With Persons Having Physical Custody of a Minor*

The trial court also ordered defendant "not to date, socialize or form a romantic relationship with any person who has physical custody of a minor unless approved by the probation officer." Defendant argues that this condition is unconstitutionally vague and overbroad in violation of his rights to freedom of association and privacy under the Fourteenth Amendment. He also contends the requirement that he not "socialize" is unconstitutionally vague. We agree that the requirement is both overbroad and vague, and we will order the trial court to strike the condition on remand.

"A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.) In other words, "[W]here an otherwise valid condition of probation impinges on constitutional rights, such conditions must be carefully tailored, ' "reasonably related to the compelling state interest in reformation and rehabilitation . . . ." ' " (*People v. Bauer*

9

(1989) 211 Cal.App.3d 937, 942.)  All other probation conditions are reviewed for abuse of discretion.  "In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1."  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)  No such abuse of discretion occurs unless the probation condition " ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]' "  (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)

The United States Supreme Court has long recognized a constitutional right to freedom of association.  (*Roberts v. United States Jaycees* (1984) 468 U.S. 609, 617.)  Included in this right is the "freedom of intimate association," which is exemplified by those personal affiliations that "attend the creation and sustenance of a family—marriage [citation]; childbirth [citation]; the raising and education of children [citation]; and cohabitation with one's relatives [citation]."  (*Id.* at p. 619; *Warfield v. Peninsula Golf & Country Club* (1995) 10 Cal.4th 594, 624.)  By restricting defendant's freedom to date and form romantic relationships with other persons, the probation condition here implicates his freedom of intimate association.  We must therefore consider whether the condition is "narrowly tailored" to the state's interest in reformation and rehabilitation. (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

The Ninth Circuit Court of Appeals considered a similar probation condition in *United States v. Wolf Child* (9th Cir. 2012) 699 F.3d 1082 (*Wolf Child*).  The defendant in that case pleaded guilty to attempted sexual abuse after attempting to have sex with an intoxicated and unconscious 16-year-old girl.  (*Id.* at p. 1088.)  The sentencing court ordered the defendant not to "date or socialize with anybody who has children under the age of 18" without prior approval from his probation officer.  (*Id.* at p. 1089.)  The court of appeals concluded that this condition was overbroad in violation of the defendant's right to freedom of association.  (*Id.* at p. 1100.)  In its reasoning, the court observed,

10

"The category of people covered by this condition with whom [the defendant] is prohibited from establishing social relationships is enormous. Probably more than half the people in the United States would be on the 'do not associate' list." (*Id.* at pp. 1100-1101.) Off-limit persons included coworkers, bosses, family members, friends, spiritual leaders, and neighbors who have children. (*Id.* at p. 1101.) The court thereby found the scope of this prohibition to be too broad.

We find the court's reasoning in *Wolf Child* persuasive. Like the probation condition in that case, the restriction here prohibits defendant from socializing with an extremely large category of persons unless he first obtains permission from his probation officer. People who have custody of minors are ubiquitous, and would likely be present among defendant's coworkers, friends, family members, neighbors, and fellow church members. And the condition prohibits defendant from socializing with them regardless of whether he has any contact with their children.[7] For example, defendant would be prohibited from socializing with coworkers—and possibly prevented from even holding a job—even though there may be little or no chance of meeting his coworkers' children. Furthermore, such socialization among coworkers and others is likely to be so frequent that it would be impractical for defendant to obtain his probation officer's approval prior to every such incident. The enormous scope of the condition thereby impinges on defendant's freedom far more broadly than necessary to serve the state's interests and the purposes of the condition.

We also agree that the term "socialize" is unconstitutionally vague in this context. "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.) "The vagueness doctrine ' "bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men [or woman] of common intelligence must necessarily guess at its

---

[7] We note that in another probation condition not challenged here, the court ordered defendant not to reside in a home where children under the age of 18 reside.

11

meaning and differ as to its application.' " [Citations.]' " (*Ibid.*) "A probation condition 'must be sufficiently precise for the probationer to know what is required of him [or her], and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*Ibid.*) We conclude that the term "socialize" is too ambiguous for a reasonable probationer to know with sufficient precision what conduct is prohibited.

The Attorney General argues that the term "socialize" is equivalent to "associate with," and is therefore not vague under *United States v. Soltero* (9th Cir. 2007) 510 F.3d 858 (*Soltero*). In *Soltero*, the sentencing court ordered the probationer not to "associate with any known member of any criminal street gang . . . ." (*Id.* at p. 865.) The court of appeals upheld the condition over a vagueness challenge by relying on the United States Supreme Court's holding in *Arciniega v. Freeman* (1971) 404 U.S. 4 (*Arciniega*). In *Arciniega*, a parolee had his parole revoked on the sole ground that he worked at a restaurant where other ex-convicts worked. The trial court found him in violation of a parole condition prohibiting him from associating with other ex-convicts. In a per curiam opinion, the high court reversed and held that the condition was not intended to prohibit "incidental contacts between ex-convicts in the course of work on a legitimate job for a common employer." (*Ibid.*) The court did not consider whether the condition was vague or overbroad.

We would agree that much incidental contact—such as waving or saying "hello" to a stranger—does not constitute socializing. But that does not sufficiently clarify or narrow the scope of the condition. As relevant here, the dictionary defines "socialize" as "enter into or maintain personal relationships with others." (Webster's 3d New Internat. Dict. (1993) p. 2162.) Under this definition, a reasonable person cannot determine with sufficient precision what conduct constitutes "socializing," i.e., entrance into a personal relationship. If defendant briefly meets with a group of coworkers while working on a project at his job, is he "socializing" with them? What if he attends the meeting

12

passively, without talking? Or if he talks, but only says a few words? Has he formed a personal relationship with any of his coworkers under these circumstances? The answers to these questions are insufficiently clear for the purposes of enforcing a probation condition.

The same is true of the requirement that defendant not "date" or "form a romantic relationship" with persons having custody of a minor. It is unclear what conduct constitutes a "date." Furthermore, it is possible for a probationer to engage in these activities without coming into contact with the minors the condition seeks to protect. Thus, these conditions impinge directly on defendant's right of association, yet they only indirectly serve the stated interest. Much less restrictive and more narrowly targeted conditions are available for the same purposes, e.g., a requirement that defendant not be present in the same room with a minor absent adult supervision.

Because the condition is both overbroad and vague, we will reverse and remand to the trial court to consider imposing a probation condition that is more "sufficiently precise" and "closely tailor[ed]" to the purpose of protecting minors in defendant's presence. (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

C. *Waiver of the Psychotherapist-Patient Privilege*

Section 1203.067, subdivision (b)(4) requires "Waiver of any psychotherapist-patient privilege to enable communication between the sex offender management professional and supervising probation officer, pursuant to Section 290.09." Defendant challenges this condition as overbroad and a violation of his constitutional right to privacy. We previously considered this claim in *Friday*, *supra*, 225 Cal.App.4th 8. We reaffirm our holding that the condition is constitutional provided the waiver is limited to enabling communication between the psychotherapist and the probation officer.

Communications between a patient and psychotherapist are protected by a psychotherapist-patient privilege based on the federal constitutional right to privacy. (*People v. Stritzinger* (1983) 34 Cal.3d 505, 511.) Because the waiver impinges on this

13

constitutional right, we must consider whether the condition is "narrowly tailored" to its purpose. (*People v. Bauer*, *supra*, 211 Cal.App.3d at p. 944.) The stated purpose of the waiver is set forth in the language of the statute: "to enable communication between the sex offender management professional and supervising probation officer." As we explained in *Friday*, the state clearly has a substantial interest in encouraging such communication. Furthermore, because the waiver is limited in scope and purpose, we concluded that the concomitant burden on the probationer's right to privacy is justified and constitutional.

For these reasons, we affirm our prior holding that probationers may constitutionally be required to waive the psychotherapist-patient privilege to the extent necessary to allow the sex offender management professional to communicate with the supervising probation officer. Furthermore, the probation officer may communicate defendant's scores on statutorily-mandated risk assessment tools to the Department of Justice to be made accessible to law enforcement as required under section 290.09, subdivision (b)(2). Apart from these exceptions, neither the psychotherapist nor the probation officer may relay protected communications to some other third party under the waiver,[8] and defendant's privacy rights based on the psychotherapist-patient privilege otherwise remain intact.

D. *Ineffective Assistance of Counsel for Failure to Object to the Restitution Fine*

Defendant argues that his trial counsel provided ineffective assistance of counsel by failing to object to a restitution fine of $264. Under the version of the statute applicable at the time of his offenses, the statutory minimum restitution fine for a felony conviction was $200. (Former § 1202.4, subd. (b)(1), Stats. 1994, ch. 46, § 4.) The Legislature later raised the minimum amount to $240, starting January 1, 2012. (§

---

[8] We recognize that certain legal mandates not at issue in this appeal may require a psychotherapist or probation officer to transmit protected communications to another third party. (See, e.g., § 11164 et seq. ["Child Abuse and Neglect Reporting Act"].)

14

1202.4, subd. (b)(1), Stats. 2011, ch. 358, § 1.) Defendant contends the trial court intended to impose the minimum fine plus a ten percent administrative penalty, but the trial court erroneously used a minimum fine amount of $240—to which the court added $24, or ten percent—in calculating the amount of $264. Defendant concludes that if his trial counsel had pointed out the mistake, the court would have corrected it and imposed the statutory minimum amount of $200 plus ten percent, or $220.

"To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. [Citations.] Counsel's performance was deficient if the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Prejudice exists where there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (*People v. Benavides* (2005) 35 Cal.4th 69, 92-93, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694.) " 'Tactical errors are generally not deemed reversible; and counsel's decision-making must be evaluated in the context of the available facts. [Citation.] To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, [the appellate court] will affirm the judgment "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." ' " (*People v. Hart* (1999) 20 Cal.4th 546, 623-624.)

" 'Finally, prejudice must be affirmatively proved; the record must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*Id.* at p. 624.) "It is the defendant's burden on appeal [. . .] to show that he or she was denied effective assistance of counsel and is entitled to relief. [Citations.] '[T]he burden of proof that the defendant must meet in order to establish his [or her] entitlement to relief on an ineffective-

15

assistance claim is preponderance of the evidence.' [Citation.]" (*In re Hill* (2011) 198 Cal.App.4th 1008, 1016.)

Defendant committed the instant offenses in 2009. The statute in effect at the time specified a minimum restitution fine of $200, but allowed for an amount up to $10,000. "The restitution fine shall be set *at the discretion of the court* and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000)." (Former § 1202.4, subd. (b)(1).) (Italics added.) Thus, the trial court had the discretion to impose a fine of $264.

Although defendant contends the trial court *intended* to impose the minimum fine, the trial court did not state its reasons for imposing the amount of $264. In the absence of any indication to the contrary, we presume the trial court applied the law properly. "It is a basic presumption indulged in by reviewing courts that the trial court is presumed to have known and applied the correct statutory and case law in the exercise of its official duties." (*People v. Mack* (1986) 178 Cal.App.3d 1026, 1032.) "[I]t is settled that: 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, original italics.) For these reasons, we find defendant has not met his burden of showing a reasonable likelihood of a more favorable outcome had trial counsel objected.

Even assuming the trial court intended to impose the statutory minimum amount, defendant's trial counsel may have had tactical reasons for not objecting to the amount the court actually imposed. Defendant was convicted on two felony counts. If his trial counsel had objected to the amount and argued for the minimum fine, the court might have imposed a larger fine pursuant to section 1202.4, subdivision (b)(2), under which the court may multiply the minimum fine amount by the number of felony counts of

16

which the defendant is convicted. Absent some showing that trial counsel did not make a tactical decision to avoid this outcome, we will not second-guess counsel's conduct.

For these reasons, we reject defendant's claim of ineffective assistance of counsel based on his counsel's failure to object to the restitution fine.

### III. DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with the following instructions. First, in light of our holding that the waiver requirement in Penal Code section 1203.067, subdivision (b)(3) is unconstitutional, the trial court shall strike the language "waive any privilege against self-incrimination and" from the probation condition implementing that subdivision. Second, the trial court shall strike the probation condition ordering defendant "not to date, socialize or form any romantic relationship with any person who has physical custody of a minor unless approved by the probation officer," and the court shall consider whether to impose a probation condition consistent with our reasoning above.


_____
MÁRQUEZ, J.


I concur:




_____
GROVER, J.


17

BAMATTRE-MANOUKIAN, Acting P.J., Concurring and Dissenting

## I.     INTRODUCTION

Defendant Robert Michael Klatt was convicted of two counts of lewd conduct with a minor aged 14 or 15.  (Pen. Code, § 288, subd. (c)(1).)[1]  The victim was defendant's 14-year-old stepbrother.  Defendant was 16 years older than the victim.  On one occasion, the victim woke up to find defendant's hand underneath his shirt, rubbing his back.  The victim also discovered his shorts had been removed.  On another occasion, the victim woke up to find defendant's hand under his shorts and boxers, moving towards his genital area.  Defendant also engaged in uncharged misconduct with the victim's older brother.  When the older brother was 13 or 14 years old, defendant showed him pornography and asked him to engage in masturbation contests.

At the sentencing hearing, defendant was placed on probation for three years, ordered to serve six months in jail, and required to register as a sex offender.  (See § 290, subd. (c).)

The trial court imposed a number of probation conditions as required by section 1203.067, subdivision (b).  Defendant was ordered to "enter, participate and complete an approved sex offender management program."  (See § 1203.067, subd. (b)(2).)  Defendant was required to "waive any privilege against self-incrimination and participate in polygraph examinations, which shall be part of the sex offender management program."  (See § 1203.067, subd. (b)(3).)  Defendant was required to "waive any psychotherapist-patient privilege to enable communication between the sex offender management professional and the Probation Officer."  (See § 1203.067, subd. (b)(4).)

---

[1] Unspecified section references are to the Penal Code.

Defendant's probation conditions also included an order that he "not date, socialize or form a romantic relationship with any person who has physical custody of a minor unless approved by the probation officer."

Defendant now challenges the probation conditions imposed pursuant to section 1203.067, subdivisions (b)(3) and (b)(4), as well as the probation condition that orders him not to "date, socialize or form a romantic relationship with any person who has physical custody of a minor unless approved by the probation officer."

As explained below and in my separate opinion in *People v. Friday* (2014) 225 Cal.App.4th 8 (*Friday*), I respectfully disagree with the majority's conclusion that the language "waive any privilege against self-incrimination" must be stricken from the probation condition required by section 1203.067, subdivision (b)(3). I agree with the majority opinion in *People v. Garcia* (2014) 224 Cal.App.4th 1283 (*Garcia*), which held that the probation condition does not violate the Fifth Amendment and is not overbroad.

However, I do agree with the majority in this case that the section 1203.067, subdivision (b)(3) probation condition is not overbroad insofar as it requires defendant to "participate in polygraph examinations" as part of the sex offender management program. (See *Friday, supra,* 225 Cal.App.4th at p. 53 [conc. & dis. opn. of Bamattre-Manoukian, Acting P.J.].) I also agree with the majority that the probation condition imposed pursuant to section 1203.067, subdivision (b)(4), which requires a waiver of the psychotherapist-patient privilege, is not overbroad and does not require modification. (See *Friday, supra,* at p. 54 [conc. & dis. opn. of Bamattre-Manoukian, Acting P.J.].)

Finally, I agree with the majority that this case should be remanded so the trial court can more narrowly tailor the probation condition prohibiting defendant from dating, socializing, or forming a romantic relationship with any person who has physical custody of a minor unless approved by his probation officer.

## II.    DISCUSSION

### A.    *Section 1203.067, Subdivision (b)(3) Probation Condition*

As a condition of probation, defendant was required to "waive any privilege against self-incrimination and participate in polygraph examinations, which shall be part of the sex offender management program, pursuant to Section 1203.067[, subdivision] (b)(3)."

Defendant argues that this probation condition conflicts with the Fifth Amendment and is overbroad, because it prohibits him from invoking the privilege against self-incrimination. In his briefing, defendant contended that the condition should be modified to specify that he is "required to cooperate with the sex offender management program to the extent it does not interfere with his Fifth Amendment right." At oral argument, defendant suggested that the language "waive any privilege against self-incrimination" could be stricken from the probation condition.

Defendant also argues this condition is overbroad because he "should only have to answer questions reasonably related to the completion of his probation conditions or his criminal conviction."

### 1.    Fifth Amendment Analysis

The majority agrees with defendant that the probation condition required by section 1203.067, subdivision (b)(3) "is prohibited by the Fifth Amendment" insofar as it requires him to waive "*any* privilege against self-incrimination." (Maj. opn. at p. 4.) The majority orders the language "waive any privilege against self-incrimination" stricken from the probation condition. (Maj. opn. at pp. 6, 17.)

The majority relies primarily on *Minnesota v. Murphy* (1984) 465 U.S. 420 (*Murphy*). In *Murphy*, the defendant was subject to a probation condition requiring that he participate in a treatment program for sexual offenders, report to his probation officer as directed, and be truthful with the probation officer " 'in all matters.' " (*Id.* at p. 422.) In his treatment program, the defendant admitted a prior rape and murder. (*Id.* at p. 423.)

3

Those admissions were communicated to the probation officer, who questioned the defendant. The defendant admitted the crimes to the probation officer, but the defendant then sought to suppress those admissions on the ground that his statements had been compelled by the probation condition. (*Id.* at pp. 424-425.)

The United States Supreme Court emphasized that in general, the Fifth Amendment is not self-executing: "a witness . . . ordinarily must assert the privilege rather than answer if he desires not to incriminate himself." (*Murphy, supra,* 465 U.S. at p. 429.) The probation condition in *Murphy* only required the defendant to be truthful, and thus the defendant still could have claimed the privilege against self-incrimination. (*Id.* at pp. 436-437.) The *Murphy* court considered whether there were any applicable exceptions to the general rule that the Fifth Amendment is not self-executing. (*Id.* at p. 429.) In particular, the court considered whether to excuse the defendant's failure to assert the privilege against self-incrimination on the basis of the "so-called 'penalty' " exception. (*Id*. at p. 434.)

The penalty exception had been applied in cases where "the State not only compelled an individual to appear and testify, but also sought to induce him to forego the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.' [Citation.]" (*Murphy, supra,* 465 U.S. at p. 434.) In *Murphy*, there was no evidence that the defendant would have been penalized for exercising his Fifth Amendment privilege. (*Id.* at pp. 437-438.) The probation condition itself "proscribed only false statements; it said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege with respect to further criminal prosecution." (*Id.* at p. 437.) Further, there was "no direct evidence that Murphy confessed because he feared that his probation would be revoked if he remained silent." (*Ibid*.)

The *Murphy* court explained how the penalty exception could apply to a probationer: "if the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." (*Murphy, supra,* 465 U.S. at p. 435, fn. omitted.) However, the court noted, "a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination." (*Ibid.,* fn. 7.)

As applied to this case, *Murphy* establishes that defendant's Fifth Amendment rights are not violated by the probation condition requiring him to waive the privilege against self-incrimination as to questions asked during the sex offender management program. The state has, "by implication, assert[ed] that invocation of the privilege" in response to such incriminating questions "would lead to revocation" of probation. (See *Murphy, supra,* 465 U.S. at p. 435.) Thus, if defendant makes any statements in response to questions posed to him during the sex offender management program, those statements will be deemed compelled under the Fifth Amendment and thus involuntary and inadmissible in a criminal prosecution. (*Ibid.*) Since such statements will necessarily fall within the penalty exception, they will not be available for use at a criminal prosecution, and defendant's Fifth Amendment rights have not been violated.[2] (See *Chavez v. Martinez* (2003) 538 U.S. 760, 769 [plur. opn. of Thomas, J.] [the Fifth Amendment is not violated "absent use of the compelled statements in a criminal case against the witness"]; *id.* at p. 777 [conc. opn. of Souter, J.].)

---

[2] At oral argument, defendant's appellate counsel conceded that if the condition is stricken, any incriminating statement he makes during the sex offender management program *can* be used against him.

5

In sum, because the penalty exception will necessarily apply to statements that defendant makes in response to questions asked as part of the sex offender management program under compulsion of the section 1203.067, subdivision (b)(3) probation condition, the condition itself does not violate the Fifth Amendment.

### 2. Overbreadth Analysis

"A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad. [Citation.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).) " 'A statute or regulation is overbroad if it "does not aim specifically at evils within the allowable area of [governmental] control, but . . . sweeps within its ambit other activities that in the ordinary circumstances constitute an exercise" of protected expression and conduct.' [Citations.]" (*People v. Leon* (2010) 181 Cal.App.4th 943, 951.) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

In enacting section 1203.067, subdivision (b), the Legislature recognized that it is appropriate to grant probation to a sex offender only if the risks can be managed, and that participation in a sex offender management program will help manage those risks. (See *Friday, supra,* 225 Cal.App.4th at p. 48 [conc. & dis. opn. of Bamattre-Manoukian, Acting P.J.].) More specifically, by enacting section 1203.067, subdivision (b)(3), the Legislature recognized that a waiver of the probationer's privilege against self-incrimination is important to the success of the sex offender management program. The Legislature reasonably concluded that allowing sex offenders on probation to refuse to answer questions would create an unacceptable danger to the community. (See § 290.03, subd. (a)(1) ["Sex offenders pose a potentially high risk of committing further sex

6

offenses after release from incarceration or commitment, and the protection of the public from reoffending by these offenders is a paramount public interest."].) If a sex offender could claim the privilege against self-incrimination during a risk exam, and thereby hide past or new offenses from the treatment team, his or her risk of reoffense could not be correctly calculated or managed. (See, e.g., *People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1214 [actuarial instrument calculated risk of sexual reoffense based on factors including the number of prior sex offenses, convictions for non-sex offenses, and details about sex offenses].) By requiring every sex offender granted probation to make full disclosures and to give up any right to refuse to answer questions posed during polygraph examinations or treatment as part of the sex offender management program, the State greatly enhances its ability to manage the serious risks posed by sex offenders who remain free in the community.

In sum, in light of the legislative intent underlying section 1203.067, subdivision (b)(3), I conclude that any limitations on defendant's Fifth Amendment rights are "closely tailor[ed] . . . to the purpose of the condition" and thus are not "invalid[] as unconstitutionally overbroad. [Citation.]" (*Sheena K., supra,* 40 Cal.4th at p. 890.) The Legislature reasonably determined that a waiver of the privilege against self-incrimination is necessary when a defendant is participating in the sex offender management program as part of his or her probation for a sex offense. The Legislature enacted section 1203.067, subdivision (b)(3) for the purpose of managing and treating sex offenders and protecting the community, not for the purpose of compelling statements to be used in criminal prosecutions. Since the condition only requires waiver of the privilege against self-incrimination as part of the sex offender management program, it is not overbroad.

### 3.  Scope of Polygraph Testing

Defendant also challenges the probation condition imposed pursuant to section 1203.067, subdivision (b)(3) insofar as it requires him to "participate in polygraph

7

examinations, which shall be part of the sex offender management program." Defendant argues the condition is overbroad and requests we modify the condition so he is required "to answer only questions reasonably related to the completion of his probation conditions or his criminal conviction." (See *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 321.)

Although the probation condition does not expressly limit the questions that may be asked during polygraph examinations to those related to the successful completion of the program or defendant's criminal conviction, such a limitation is inherent in the phrase "which shall be part of the sex offender management program." In other words, the probation condition requires polygraph examinations to be used only in furtherance of a probationer's treatment, and thus requires that the questions asked be relevant to that treatment.

The majority construes the requirement of defendant's participation in polygraph examinations as allowing only "questions reasonably related to a probationer's successful completion of the sex offender management program, the crime of which he or she was convicted, or related criminal behavior, whether past or future." (Maj. opn. at p. 9; see *Friday, supra,* 225 Cal.App.4th at p. 52.) I similarly conclude that the probation condition need not be modified to expressly state that the questions asked during polygraph examinations must be reasonably related to the completion of defendant's treatment program or his conviction, because such a limitation is inherent in the condition. (See *Friday, supra,* at p. 53 [conc. & dis. opn. of Bamattre-Manoukian, Acting P.J.].)

### B.     *Section 1203.067, Subdivision (b)(4) Probation Condition*

Defendant also challenges the probation condition imposed pursuant to section 1203.067, subdivision (b)(4), which requires defendant to waive "any psychotherapist-patient privilege to enable communication between the sex offender management professional and the Probation Officer." Defendant contends this probation

condition is overbroad and violates his constitutional right to privacy, because it requires a "complete waiver" of the psychotherapist-patient privilege. He contends the condition should be stricken or modified. He suggests the condition could be modified to "limit the waiver only to subjects necessary for rehabilitation" and to "limit[] disclosure of otherwise privileged psychotherapist-patient communications to the probation officer and the court."

The majority concludes there is no need to modify the probation condition imposed pursuant to section 1203.067, subdivision (b)(4) because it construes the statute as requiring a waiver of the psychotherapist-patient privilege only insofar as it is "limited to enabling communication between the psychotherapist and the probation officer." (Maj. opn. at p. 13; see *Friday, supra,* 225 Cal.App.4th at pp. 32-33.) I agree there is no need to modify the probation condition imposed pursuant to section 1203.067, subdivision (b)(4). (See *Friday, supra,* at p. 53 [conc. & dis. opn. of Bamattre-Manoukian, Acting P.J.].)

### C. *Relationship Condition*

Defendant's probation conditions included an order that he "not date, socialize or form a romantic relationship with any person who has physical custody of a minor unless approved by the probation officer."

Defendant contends this probation condition is "unconstitutionally overbroad, as it violates [his] due process right to associate, potentially marry and procreate; and his right to privacy under the Fourteenth Amendment." Defendant contends the probation condition is also "unconstitutionally vague, as it does not clearly state what it means to 'socialize,' leaving [him] uncertain as to exactly what behavior is prohibited." Defendant does not contend that the terms "date" or "form a romantic relationship" are vague.

In the respondent's brief, the Attorney General urges this court to "affirm" the probation condition, contending that "the need to protect" minor children outweighs any liberty interest defendant has in associating with adults and that the term "socialize" is

9

not impermissibly vague. However, at oral argument, the Deputy Attorney General conceded that the term "socialize" could prove to be "difficult."

The majority agrees with defendant that the probation condition is overbroad. The majority focuses on the term "socialize" and concludes that the probation condition's "enormous scope . . . impinges on defendant's freedom [of association] far more broadly than necessary to serve the state's interests and the purposes of the condition." (Maj. opn., p. 11.) The majority also agrees with defendant that "the term 'socialize' is unconstitutionally vague in this context." (*Ibid*.) The majority further finds that "[t]he same is true of the requirement that defendant not 'date' or 'form a romantic relationship' with persons having custody of a minor." (*Id*. at p. 13.)

The majority acknowledges that the probation condition seeks to protect minors but suggests that the trial court could have imposed a "less restrictive and more narrowly targeted" condition, such as "a requirement that defendant not be present in the same room with a minor absent adult supervision." (Maj. opn. at p. 13.) The majority concludes it is necessary to remand this case so the trial court can "consider imposing a probation condition that is more 'sufficiently precise' and 'closely tailor[ed]' to the purpose of protecting minors in defendant's presence." (*Ibid*.)

Although defendant states he is bringing a facial challenge to this probation condition, his argument appears to be more of an applied challenge. For instance, defendant asserts "[t]here is no evidence on this record" that the probation condition is necessary, pointing out that "there was no evidence that [he] ever used a relationship with an adult to gain access to the adult's child . . . ." "A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual. [Citation.]" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.) By contrast, an as applied challenge "contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether

10

in those particular circumstances the application deprived the individual to whom it was applied of a protected right." (*Ibid.*) While a facial challenge to a probation condition may present a " ' "pure question[] of law that can be resolved without reference to the particular sentencing record developed in the trial court," ' " an as applied challenge generally does not, such that " ' "[t]raditional objection and waiver principles" ' " will usually apply. (*Sheena K., supra,* 40 Cal.4th at p. 889.)

Defendant failed to object below, but addressing his claim in this appeal will forestall a claim that trial counsel was ineffective. (See *People v. Lewis* (1990) 50 Cal.3d 262, 282.) Here, defendant had access to the victim and the victim's brother, and defendant was able to spend time alone with both boys, through his father's relationship with the boys' mother. By imposing the probation condition that defendant "not date, socialize or form a romantic relationship with any person who has physical custody of a minor unless approved by the probation officer," the trial court was apparently trying to ensure that defendant did not have similar access to adolescent boys in the future.

Ultimately, I agree that the probation condition could be more narrowly tailored to address the trial court's concerns about defendant's access to adolescent males or minors in general. I further agree that the trial court is in the best position to make any necessary modifications to the condition and therefore, that this case should be remanded for that purpose.

### III.   CONCLUSION

In sum, I continue to adhere to the views expressed in my separate opinion in *Friday, supra,* 225 Cal.App.4th at pp. 53-54 [conc. & dis. opn. of Bamattre-Manoukian, Acting P.J.] regarding the probation conditions required by section 1203.067, subdivisions (b)(3) and (b)(4). I would not strike or modify either of those probation conditions. (See also *Garcia, supra,* 224 Cal.App.4th at p. 1283.) As to the probation condition that requires defendant not to "date, socialize or form a romantic relationship

11

with any person who has physical custody of a minor unless approved by the probation officer," I believe it is appropriate to remand this matter so the trial court can more narrowly tailor the probation condition to address concerns about defendant's access to adolescent males or minors in general.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

12

| | |
|---|---|
| Trial Court: | Santa Clara County<br>Superior Court No.: C1094633 |
| Trial Judge: | The Honorable Philip H. Pennypacker |
| Attorney for Defendant and Appellant<br>Robert Michael Klatt: | Maggie Shrout<br>under appointment by the Court of<br>Appeal for Appellant |
| Attorneys for Plaintiff and Respondent<br>The People: | Kamala D. Harris,<br>Attorney General |
| | Dane R. Gillette,<br>Chief Assistant Attorney General |
| | Gerald A. Engler,<br>Senior Assistant Attorney General |
| | Catherine A. Rivlin,<br>Supervising Deputy Attorney General |
| | Sara Turner,<br>Deputy Attorney General |